UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ALONZO DEWAYNE BELL,

    Plaintiff,

    v.      CAUSE NO. 3:24-CV-955-HAB-SLC

EMILY LAYTON, et al.,

    Defendants.

OPINION AND ORDER

Alonzo Dewayne Bell, a prisoner without a lawyer, filed a complaint against Sgt. Emily Layton and L.T. Heater. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Bell alleges that, on July 15, 2024, he spoke with Sgt. Layton about a change in his cellmate's behavior. He was not taking his medications and had been talking to himself, walking constantly, and beating on things. They had a standoff of some kind, and Bell was concerned about his safety, so he asked that one of them be moved. Sgt. Layton said she would see about it, but time passed and things escalated between Bell and his

cellmate. He spoke with Sgt. Layton a second time. She indicated that there was nothing she could do, but she told L.T. Heater about the situation.

L.T. Heater arrived and began joking with officers and Bell's cellmate. He said there was nothing he could do. The cellmate began cursing at officers. He then covered the window and said, "I'm killing my bunky." ECF 1 at 3. The officers continued to joke, but moments later the slot came down and Bell and his cellmate were told to cuff up. Bell cuffed up, but his cellmate did not comply. L.T. Heater discharged mace into the cell. A moment later Sgt. Layton discharged "Mark 90" into the cell.[1] Bell was then signaled to exit the cell.

Bell was offered a decontamination shower, but he declined. The cell was searched. Officers[2] started to put them both back in the cell. Bell asked why, but he was ignored. Feeling he had no other options, Bell refused to return the cuffs in hopes it would prevent them from putting him back in a room with his cellmate. After that, both Bell and his cellmate were removed.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Hale y v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the

---

[1] It is not entirely clear what "Mark 90" is, although it appears to be a type of mace of pepper spray.

[2] It is unclear which officers are responsible for attempting to put Bell and his cellmate back in the cell together.

2

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

Here, Bell expressed general concerns about his cell mate's wellbeing and the potential for violence. He mentions a single standoff between them, but he provides no details about that encounter. He says things escalated, but he provides no details about the escalation either. It is not clear what he told Sgt. Layton about the standoff or escalation of tensions between them. It cannot be plausibly inferred from the facts included in the complaint that Bell communicated a specific, credible, and imminent risk of serious harm to Sgt. Layton or L.T. Heater prior to his cellmate's threat to kill Bell, which was made in front of officers. Based on what Bell did communicate, Sgt. Layton and L.T. Heater were investigating his assertions at the very moment the cell mate picked to escalate things. And, once the officers were aware of a specific, imminent threat, they took action. It cannot be plausibly inferred from these facts that Sgt. Layton or L.T. Heater were deliberately indifferent to Bell's safety. With the benefit

3

of hindsight, it is clear their judgements were poor, but poor judgement does not amount to deliberate indifference.

Bell may also be claiming that the defendants used excessive force against him by deploying mace or another chemical agent. The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* at 890.

Here, the situation with Bell's cellmate quickly deteriorated while the defendants were present. Bell submitted to handcuffs, but his cellmate – who had just threatened to kill him – did not. The decision to spray mace into the cell in order to safely extract Bell and prevent the possibility of an attack by his cellmate cannot be plausibly viewed as malicious or sadistic. Therefore, Bell cannot proceed on an excessive force claim.

This complaint does not state a claim for which relief can be granted. If Bell believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least

where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Alonzo Dewayne Bell until **May 30, 2025**, to file an amended complaint; and

(2) CAUTIONS Alonzo Dewayne Bell if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on May 1, 2025.

> s/ *Holly A. Brady*
> JUDGE HOLLY A. BRADY
> UNITED STATES DISTRICT COURT